*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ASSOCIATION OF HOME HELP CARE
AGENCIES,

       Plaintiff-Appellant,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES and STATE OF MICHIGAN,

       Defendants-Appellees.

FOR PUBLICATION
November 19, 2020
9:20 a.m.

No. 349405
Court of Claims
LC No. 18-000100-MZ

Before: MARKEY, P.J., and METER and GADOLA, JJ.

PER CURIAM.

Plaintiff, Association of Home Help Care Agencies (AHHCA), appeals by right the order of the Court of Claims granting summary disposition in favor of defendants, State of Michigan and Department of Health and Human Services (DHHS), under MCR 2.116(C)(8) and (10). We affirm.

## I. BACKGROUND

This dispute concerns DHHS's administration of the Home Help Program, which is a Medicaid program that provides personal care services to individuals who require hands-on assistance with the functions of daily living.[1] DHHS is tasked with monitoring, regulating, and

---

[1] In *Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231, 245-246; 931 NW2d 571 (2019), our Supreme Court summarized the general mechanics of Medicaid, observing:

       The Medicaid program is governed by a complex web of interlocking statutes, as well as regulations and interpretive documents published by state and federal agencies. The program was created by Title XIX of the Social Security Act of 1965, PL 89-97; 79 Stat 343, codified at 42 USC 1396 *et seq*. Medicaid is generally a need-based assistance program for medical care that is funded and

policing home health or help agencies[2] in Michigan that provide care under the program. DHHS-approved home help care agencies are eligible to join AHHCA.

## A. STATUTORY FRAMEWORK FOR IMPLEMENTING STATE MEDICAID POLICIES AND THE APPROVED STATE PLAN

As part of the Social Welfare Act, MCL 400.1 *et seq.*, MCL 400.111a authorizes the director of DHHS to implement policies governing the provision of services:

> (1) The director of the department of community health, after appropriate consultation with affected providers and the medical care advisory council established according to federal regulations, may establish policies and procedures that he or she considers appropriate, relating to the conditions of participation and requirements for providers established by section 111b and to applicable federal law and regulations, to assure that the implementation and enforcement of state and federal laws are all of the following:
>
> (a) Reasonable, fair, effective, and efficient.
>
> (b) In conformance with law.
>
> (c) In conformance with the state plan for medical assistance adopted under section 10 and approved by the United States department of health and human services.
>
> (2) The consultation required by this section shall be conducted in accordance with guidelines adopted by the state department of community health

---

administered jointly by the federal government and individual states. At the federal level, the program is administered by the Secretary of Health and Human Services through the Centers for Medicare & Medicaid Services (CMS). The State Medicaid Manual is published by CMS to help guide states in their administration of the program, including how to determine an applicant's eligibility for benefits. Each participating State develops a plan containing reasonable standards for determining eligibility for and the extent of medical assistance within boundaries set by the Medicaid statute and Secretary of Health and Human Services. In formulating those standards, States must provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant. [Citations, quotation marks, emphasis, and ellipses omitted.]

---

[2] Federal law refers to home "health" and state law refers to home "help," and we shall use whichever term is appropriate for the context of a particular discussion, although for purposes of our analysis and holding, the terms are effectively interchangeable.

according to section 24 of the administrative procedures act of 1969, 1969 PA 306, MCL 24.224.

In May 1997, "[a]ll the statutory authority, powers, duties, functions and responsibilities of the Home Help Program" stated in MCL 400.106, MCL 400.109, and MCL 400.109c were transferred to the Department of Community Health, Executive Order No. 1997-5(III)(1); MCL 400.224, which subsequently became DHHS in 2015 under Executive Order No. 2015-4.

The "consultation" requirement referenced in MCL 400.111a(1) and (2) incorporates the procedure for adopting guidelines outlined in MCL 24.224 of the Administrative Procedures Act of 1969 (APA), MCL 24.201 *et seq*., and MCL 24.224 provides:

(1) Before the adoption of a guideline, an agency shall give electronic notice of the proposed guideline to the committee, the office of regulatory reform, and each person who requested the agency in writing or electronically for advance notice of proposed action that may affect the person. . . . The notice shall be given by mail, in writing, or electronically transmitted to the last address specified by the person requesting the agency for advanced notice of proposed action that may affect that person. . . .

(2) The notice required by subsection (1) shall include all of the following:

(a) A statement of the terms or substance of the proposed guideline, a description of the subjects and issues involved, and the proposed effective date of the guideline.

(b) A statement that the addressee may express any views or arguments regarding the proposed guideline or the guideline's effect on a person.

(c) The address to which written comments may be sent and the date by which comments shall be mailed or electronically transmitted, which date shall not be less than 35 days from the date of the mailing or electronic transmittal of the notice.

(d) A reference to the specific statutory provision about which the proposed guideline states a policy.[3]

---

[3] We note that the policies or bulletins at issue in this case are not APA guidelines. An APA "guideline" is defined as "an agency statement or declaration of policy that the agency intends to follow, that does not have the force or effect of law, and that binds the agency but does not bind any other person." Rather, MCL 400.111a authorizes the establishment of policies and procedures that home help providers are required to follow, and it merely incorporates the "guideline" procedure in the APA for purposes of explaining what must be done to satisfy the "consultation" requirement of MCL 400.111a.

The Social Security Act sets forth conditions for home health agencies' participation in Medicaid. 42 USC 1395bbb. Home health agencies must "use" home health aides who have completed certain training requirements and who are "competent to provide" home health care, in addition to conducting regular performance reviews and providing "regular in-service education" to ensure the continued competence of home health aides. 42 USC 1395bbb(a)(3). Federal law lists convictions that result in mandatory exclusion from participation in federal health care programs, which include convictions for program-related crimes, patient abuse, healthcare fraud, and controlled substance offenses. 42 USC 1320a-7(a). Federal law also lists convictions that "may exclude" individuals from participation in a federal health care program, and those offenses, amongst many, include misdemeanor convictions for fraud and financial misuse related to a healthcare program. 42 USC 1320a-7(b). AHHCA refers to these categories as "mandatory" and "permissive" convictions.

The federal government approved a State Plan for Michigan in August 2007. "The State plan is a comprehensive written statement submitted by the agency describing the nature and scope of its Medicaid program and giving assurance that it will be administered in conformity with [federal law]." 42 CFR 430.10. The approved State Plan described the services available through the Home Help Program, which—for one calendar month—are a maximum of five hours for shopping, six hours for light housekeeping, seven hours for laundry, and 25 hours for meal preparation. According to the State Plan, providers of home help services "shall be qualified individuals or individuals who contract with or are employed by an agency."

## B. DHHS POLICIES GOVERNING HOME HELP AGENCIES IN MICHIGAN

In 2008, DHHS issued Medical Services Administration (MSA) Bulletin Number 08-28, setting forth the wage rate for agency providers of home help services and indicating that future wage increases for both individual and agency providers would occur concurrently and be based on minimum-wage-law changes and legislative appropriations. An agency was eligible for DHHS approval if it had a federal tax identification number and if it employed or subcontracted with two or more persons to provide home help care. In 2015, DHHS issued MSA 15-13, requiring home help agencies to employ workers directly, although it held this requirement in abeyance until further notice for agencies approved before June 1, 2015. DHHS further allowed home help agency workers who had permissive or non-mandatory convictions to provide services with the consent of the beneficiary. In 2017, DHHS issued MSA 17-32, replacing all prior policies governing agency rates and setting new rates.

DHHS subsequently provided notice of a proposed policy draft that became MSA 18-09, updating the standards governing home help agencies. DHHS required agencies to employ workers directly, and it suspended the ability of a beneficiary to consent to allowing an agency employee with a criminal history to provide services. Agencies that did not comply with the requirements of the policy could be removed from the Approved Agency List or disenrolled. Agencies removed from the approved list would still be eligible for reimbursement but at the individual provider rate. If an agency was disenrolled, DHHS would notify the agency of the disenrollment determination within 10 days, and this decision could be appealed. An agency could provide services while an appeal was pending if the agency accepted responsibility to repay funds if the disenrollment determination was upheld.

In response to DHHS's solicitation of comments, one commenter disagreed with the suspension of the availability of a beneficiary to consent to receive services from an agency provider who had a criminal record, claiming that it would result in a shortage of eligible providers. DHHS indicated that it did not have the capacity to monitor all the consent arrangements in order to ensure the safety of beneficiaries although DHHS would still permit beneficiaries who knew and trusted their provider to employ that person as an individual provider rather than through an agency despite the criminal history. Another commenter disagreed with the direct employment requirement because it would create a financial hardship for agencies. DHHS responded that it was covering some of the taxes and costs for agencies and that agencies would also be paid a higher rate of compensation in light of the added costs so that agencies could continue to confer the same level of benefits on their employees. When DHHS issued MSA 18-09, it notified agencies that the direct employment requirement would apply to all agencies.

AHHCA filed a complaint in the Court of Claims, challenging the validity of MSA 17-32 and MSA 18-09 on constitutional and statutory grounds. AHHCA also sought a temporary restraining order and a preliminary injunction. The Court of Claims denied all injunctive relief and AHHCA's motion for reconsideration regarding injunctive relief. The parties subsequently moved for summary disposition. The Court of Claims granted defendants' motion for summary disposition but denied AHHCA's competing motion for summary disposition. The Court of Claims subsequently denied AHHCA's motion for reconsideration of the order summarily dismissing its complaint.

## II. ANALYSIS

### A. SUMMARY DISPOSITION

#### 1. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012).[4] We also review de novo matters

---

[4] MCR 2.116(C)(8), which provides for summary disposition when a "party has failed to state a claim on which relief can be granted," tests the legal sufficiency of a complaint. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). The trial court may only consider the pleadings in rendering its decision under MCR 2.116(C)(8). *Id.* All factual allegations in the complaint are accepted as true. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 380-381, 563 NW2d 23 (1997). "The motion should be granted if no factual development could possibly justify recovery." *Beaudrie*, 465 Mich at 130. In *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), this Court set forth the framework regarding analysis of a motion for summary disposition brought under MCR 2.116(C)(10), explaining:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a

of statutory interpretation. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).[5] This Court likewise reviews de novo questions of constitutional law. *Adair v Michigan*, 497 Mich 89, 99; 860 NW2d 93 (2014).

## 2. ALLEGED STATUTORY VIOLATIONS

States that choose to participate in Medicaid must follow federal requirements. *In re Estate of Rasmer*, 501 Mich 18, 25; 903 NW2d 800 (2017). "Medicaid is a program that uses a form of cooperative federalism under which coordinated state and federal efforts coexist within a complementary framework in regard to administration." *People v Kanaan*, 278 Mich App 594, 612; 751 NW2d 57 (2008). Federal requirements for state participation in Medicaid do not deprive a state of its own "authority to set parameters and controls relative to Medicaid." *Id*. This Court has described DHHS's authority to implement and administer a Medicaid program:

> Pursuant to the Social Welfare Act . . ., [DHHS] is responsible for establishing and administering medical assistance programs in the state, including the Medicaid program. See MCL 330.3101. Consistently with separation of powers principles, and in light of the complex nature of the endeavor, the Legislature has

---

motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

[5] In *Wayne Co v AFSCME Local 3317*, 325 Mich App 614, 633-634; 928 NW2d 709 (2018), this Court recited the rules of statutory construction:

> The primary task in construing a statute is to discern and give effect to the Legislature's intent, and in doing so, we start with an examination of the language of the statute, which constitutes the most reliable evidence of legislative intent. When the language of a statutory provision is unambiguous, we must conclude that the Legislature intended the meaning that was clearly expressed, requiring enforcement of the statute as written, without any additional judicial construction. Only when an ambiguity in a statute exists may a court go beyond the statute's words to ascertain legislative intent. We must give effect to every word, phrase, and clause in a statute, avoiding a construction that would render any part of the statute nugatory or surplusage. [Citations omitted.]

delegated broad authority to [DHHS] to enable it to accomplish its statutory responsibilities. . . . However, consonant with the delegation doctrine, such authority is circumscribed by the addition of substantive standards, including, for example, eligibility requirements, types of services provided, and the directive to develop policies and procedures regarding the participation of, and reimbursement to, health care service providers. See MCL 400.106, 400.109, 400.111a. . . . Generally, then, [DHHS] has been delegated the responsibility of establishing and administering health care programs . . . that most effectively meet the needs of those persons eligible for Medicaid and state-funded services, using the state's limited resources in the most efficient manner possible. In the absence of a specific legislative directive that modifies its authority, [DHHS] is obligated to fulfill its statutory duties to establish, administer, and maintain the integrity of such programs. [*Pharm Research & Mfr of America v Dep't of Community Health*, 254 Mich App 397, 404-405; 657 NW2d 162 (2002).]

AHHCA argues that MSA 18-09's direct employment mandate violates the approved State Plan. And MCL 400.111a(1)(c) requires DHHS's policies and procedures to be in conformance with the State Plan adopted and approved under federal law. The State Plan declares that "[p]roviders shall be qualified individuals or individuals who contract with or are employed by an agency." AHHCA construes this provision to mean that DHHS must allow provider agencies to employ *or* contract with workers, but this interpretation adds a requirement that is not present in the State Plan. The plain language of the State Plan simply dictates that qualified individuals, individuals who contract with an agency, or individuals who are employed by an agency are the only individuals permitted to act as providers relative to home help services; it does not mean that DHHS *must* allow agencies to contract with workers. Therefore, AHHCA has not shown a violation of the State Plan and MCL 400.111a.

AHHCA next argues that MSA 18-09's exclusion of agency workers with permissive convictions violates 42 USC 1320a-7(b) and MCL 333.20173a, which allow providers with permissive convictions to provide home help services. As indicated earlier, 42 USC 1320a-7(b) provides that individuals "may" be excluded from participating in a federal health care program on the basis of enumerated convictions. "[T]he word 'may' typically reflects a permissive condition, entrusting a particular choice to a party's discretion." *In re Complaint of Mich Cable Telecom Ass'n*, 241 Mich App 344, 361; 615 NW2d 255 (2000). AHHCA's interpretation that 42 USC 1320a-7(b) *requires* state agencies to allow these providers to participate in the program is inconsistent with the plain language of the federal statute. Accordingly, we reject this argument.

Furthermore, MCL 333.20173a does not support AHHCA's position. MCL 333.20173a(1) provides that "a covered facility shall not employ, independently contract with, or grant clinical privileges to an individual who regularly has direct access to or provides direct services to patients or residents in the covered facility if the individual" has been convicted of certain crimes, including those listed in 42 USC 1320a-7(a) (mandatory convictions). MCL 333.20173a does not contain a provision that parallels 42 USC 1320a-7(b), which pertains to permissive convictions. AHHCA's citation of MCL 333.20173a, without any additional argument or explanation, does not support its stance that defendants were not permitted to exclude workers with permissive convictions. MCL 333.20173a does not mandate that individuals with permissive convictions or convictions not

enumerated in the statute are entitled to act as providers or that DHHS is not permitted to preclude their participation as providers.

AHHCA next argues that the notice for proposed MSA 18-09—a draft of the policy—did not satisfy the requirement in MCL 24.224(2)(d) to reference a specific statutory provision about which MSA 18-09 stated a policy, which was necessary to establish the "consultation" requirement in MCL 400.111a. The Court of Claims ruled, and defendants do not contest, that the notice for MSA 18-09 did not contain a citation of the statutory provision implemented by the bulletin. The Court of Claims, however, citing the substantial-compliance provision in MCL 24.227(1), ruled that defendants had substantially complied with the notice requirements of MCL 24.224(2). AHHCA maintains that defendants were "required to comply with all of the requirements in issuing bulletins, not just some." But AHHCA's argument does not account for MCL 24.227(1), which provides that "[a] guideline adopted after the effective date of this section is not valid unless processed in *substantial compliance* with sections *24*, 25, and 26." (Emphasis added.) To the extent that AHHCA argues that the omission of a statutory reference reflected the lack of statutory authority underlying the policies affecting employment and providers with convictions, we reject the contention. As this Court acknowledged in *Pharma Research*, 254 Mich App at 404-405, "the Legislature has delegated broad authority to [DHHS] to enable it to accomplish its statutory responsibilities," including administration of the Home Help Program, which is amply supported by state and federal statutes. AHHCA has not established that the Court of Claims erred by rejecting its argument that MSA 18-09 was invalid because DHHS did not comply with MCL 24.224(2)(d).

## 3. PROCEDURAL DUE PROCESS

The United States and Michigan Constitutions prohibit the deprivation "of life, liberty, or property, without due process of law." US Const, Am XIV; Const 1963, art 1, § 17. A procedural due process claim must identify a property or liberty interest interfered with by the challenged state action and must show that the procedures leading to the deprivation of that interest were constitutionally inadequate. *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004). In *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976), the United States Supreme Court observed:

> More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

"[P]rocedural due process requires that a party be provided notice of the nature of the proceedings and an opportunity to be heard by an impartial decision maker at a meaningful time and in a meaningful manner." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 213-214; 761 NW2d 293 (2008).

AHHCA argues that MSA 18-09 does not give providers constitutionally adequate notice of violations of the policy and an opportunity to correct the violations or challenge them before disenrollment. This claim is refuted by an examination of the enrollment and disenrollment process for existing agencies, such as AHHCA's member agencies, described in MSA 18-09. MSA 18-09 requires "[a] current Medicare certified home health agency . . . to provide a letter of intent and a copy of the current Medicare certification." Among other information, a letter of intent must state that the agency owner and managing employee "will ensure that the agency and the agency's caregivers and employees have read all current [DHHS] Home Help policies and procedures and will provide services in compliance with those requirements." Agencies must "pass a criminal history screening." MSA 18-09 provides that DHHS will notify a provider of approval, denial, or the need for additional information. MSA 18-09 further states that "[t]he [DHHS] Home Help Unit will audit employment documents for a sample of agencies each year." "An agency may be disenrolled if it fails to meet any of the requirements in" MSA 18-09. DHHS will provide an agency of a disenrollment determination within 10 days of the decision. An agency that does not meet the requirements of MSA 18-09 may also be removed from the Approved Agency List, but such agencies "will be eligible to provide services at the individual rate for Home Help." Agencies who are removed from the Approved Agency List may seek reinstatement. The bulletin provides that agencies "have the right to appeal *any* adverse action taken by [DHHS]." (Emphasis added.)

For enrolled agencies, removal from the approved list and disenrollment are both options for DHHS to take against an agency that does not meet the requirements of the bulletin, so it does not follow that disenrollment is immediate and automatic for all agencies that do not comply with the policies of MSA 18-09. Additionally, again, the removal of an agency from the approved list does not require its complete shutdown because such agencies are eligible to receive the individual provider rate. Therefore, AHHCA's argument that agencies will be disenrolled without the opportunity to take corrective action, although possible, is not the only procedure contemplated by the bulletin.

AHHCA states that "pending payments will be lost resulting in a retroactive effect as payments are made in arrears." AHHCA cites no support for this assertion, nor does the bulletin support this statement. MSA 18-09 indicates, as noted earlier, that a provider appealing a disenrollment decision "may continue to provide services during the appeal period if the agency provider accepts responsibility for the repayment of funds should the [DHHS] decision be upheld." This provision contemplates either continued or at least retroactive payment.

Moreover, AHHCA's focus on the adequacy of the opportunity to challenge a disenrollment determination fails to fully analyze the issue because it does not address the *Mathews* balancing test. AHHCA emphasizes the disruption of services and payment without addressing the risk of error resulting from the current procedure, the value added by providing an opportunity for a hearing or to take corrective action before disenrollment, and defendants' interests, including the administrative burden of providing agencies with an opportunity to be heard or overseeing agencies' efforts to take corrective action. The United States Court of Appeals for the Second Circuit concluded that balancing a beneficiary's interest in receiving home health benefits with the "fiscal and administrative burden" to the state did not require the state to provide a beneficiary with "a pre-deprivation review procedure" before reducing or terminating continued home health services. *Lutwin v Thompson*, 361 F3d 146, 148, 158 (CA 2, 2004). Although

nonbinding, see *Jaqua v Canadian Nat'l R, Inc*, 274 Mich App 540, 546; 734 NW2d 228 (2007), the Second Circuit's ruling highlights the insufficiency of AHHCA's procedural due process claim in this case. Given the overall framework of MSA 18-09, we do not accept AHHCA's claim that procedural due process requires notice before disenrollment and an opportunity to take corrective action. If, for example, an agency commits fraud or violates a policy requirement, DHHS can disenroll the agency, but timely notice of the disenrollment determination must then be given to the agency, which determination would constitute an "adverse action," thereby triggering a right to an appeal before any permanent deprivation of an interest. And AHHCA has not persuaded us of any due process right to take corrective action. In short, AHHCA fails to show that the existing procedure under MSA 18-09 is constitutionally inadequate.[6]

## 4. EQUAL PROTECTION

AHHCA argues that MSA 18-09 violated equal protection by singling out home help care agencies in imposing the direct employment requirement and in removing an agency's ability to obtain a beneficiary's agreement to receive services from a worker with a permissive conviction. "The Equal Protection Clauses of the United States and Michigan Constitutions provide that no person shall be denied the equal protection of the law." *Wysocki v Kivi*, 248 Mich App 346, 350; 639 NW2d 572 (2001). "This constitutional guarantee requires that persons similarly situated be treated alike." *Rose v Stokely*, 258 Mich App 283, 295-296; 673 NW2d 413 (2003). Different levels of review apply depending on the basis of the classification scheme. *Phillips v Mirac, Inc*, 470 Mich 415, 432-433; 685 NW2d 174 (2004). "In Michigan, courts have applied the rational basis test principally to economic and social legislation." *Wysocki*, 248 Mich App at 354. "Where the proponent of an equal protection argument is not a member of a protected class, or does not allege violation of a fundamental right, the equal protection claim is reviewed using the rational basis test." *Houdek v Centerville Twp*, 276 Mich App 568, 585-586; 741 NW2d 587 (2007). "Under this test, a statute is constitutional if it furthers a legitimate governmental interest and if the challenged statute is rationally related to achieving that interest." *Barrow v City of Detroit Election Comm*, 301 Mich App 404, 419-420; 836 NW2d 498 (2013). The party asserting an equal protection violation must show that the policy "is arbitrary and wholly unrelated in a rational way to the objective of the" policy. *Wysocki*, 248 Mich App at 354 (quotation marks and citation omitted).

Like AHHCA's procedural due process claim, its equal protection argument is devoid of factual support and proper legal analysis. Central to an equal protection analysis is a comparison of similarly-situated entities experiencing differential treatment. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 328-329; 783 NW2d 695 (2010). That type of comparison is absent from AHHCA's equal protection argument. AHHCA is correct that MSA 18-09 applies to home help care agencies only, but introducing a policy bulletin that sets the standards governing home help care agencies does not establish differential treatment in the absence of documentation of policies governing other types of providers. AHHCA states that

---

[6] AHHCA emphasizes the hardship resulting from the restructuring required to comply with MSA 18-09, but it has provided no facts to support its claim and has not conducted the necessary legal analysis.

"[a]ll other providers of home help care services, from all other Medicaid funded provider groups, are allowed to continue the prior practices of contracting home help care workers including, for example, hospice providers, community mental health providers, and state direct home help workers." AHHCA also claims that defendants "do not employ their home help care workers." AHHCA offers no factual support for these statements. Additionally, AHHCA does not describe the types of services offered by the other providers as they compare to home help, and it is unclear whether the other types of providers identified by AHHCA also provide home help care services or other types of Medicaid-funded services more broadly. And AHHCA fails to describe the circumstances of defendants' use of home help care workers. In sum, AHHCA has not set forth a foundation for its equal protection claim showing that home help care agencies are treated differently from other similarly-situated groups.

Even assuming differential treatment, AHHCA has not shown that MSA 18-09 fails the rational-basis test, which entails examination of the purpose of the policy. See *Phillips*, 470 Mich at 434-435. "A classification reviewed on this basis passes constitutional muster if the legislative judgment is supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable." *Harvey v Michigan*, 469 Mich 1, 7; 664 NW2d 767 (2003). A policy is presumed valid, and the party asserting an equal protection violation has the burden of proving otherwise. *Shepherd Montessori*, 486 Mich at 318-319. DHHS produced the responses to the comments received before it issued MSA 18-09, addressing the policies regarding direct employment and permissive convictions. As to precluding beneficiary consent to a provider with a criminal record, DHHS stated that it did "not have the capacity to sufficiently monitor agency assignments to ensure the safety of beneficiaries who use a provider with a criminal history." In addition, DHHS acknowledged that beneficiaries could still agree to receive services from a known and trusted *individual* provider with a criminal history. AHHCA has not countered DHHS's stated safety concern. In response to a commenter's disagreement with the direct employment requirement, DHHS stated that it paid "the employer's share of federal taxes and unemployment" and that "[a]gencies are paid at a higher rate so that all personal care staff who work for the agency receive the same benefit." That is, the direct employment requirement served to equalize treatment of workers. AHHCA has not shown that DHHS lacked a rational basis for implementing the policies; rather, AHHCA asserts that the policies are arbitrary because they did not exist before. This argument fails to identify a shortcoming in DHHS's explanations. AHHCA has not met its burden of establishing that the policy had no rational basis and violated equal protection.

## B. RECONSIDERATION

AHHCA argues that the Court of Claims erred by denying its motion for reconsideration, raising issues that the Court of Claims had addressed and rejected in the motion for summary disposition, and which we have now addressed and rejected in this opinion as part of our ruling affirming the Court of Claims. Accordingly, there was no abuse of discretion in denying the motion for reconsideration, and we affirm that ruling by the Court of Claims. MCR 2.119(F)(3); *Sanders v Perfecting Church*, 303 Mich App 1, 8; 840 NW2d 401 (2013).

## C. PRELIMINARY INJUNCTION

Finally, AHHCA challenges the denial of injunctive relief. This issue is now moot. "An issue is moot if an event has occurred that renders it impossible for the court to grant relief." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). Because we have affirmed summary dismissal of AHHCA's claims in this lawsuit, which claims provided the support for the request for injunctive relief, the issue of injunctive relief has been rendered moot.

We affirm. Having fully prevailed on appeal, defendants may tax costs under MCR 7.219.


/s/ Jane E. Markey
/s/ Patrick M. Meter
/s/ Michael F. Gadola