# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF WILMA FRANCIS KETCHUM,

        Plaintiff-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Defendant-Appellant.

FOR PUBLICATION
March 1, 2016
9:00 a.m.

No. 324741
Clinton Circuit Court
LC No. 14-011300-AA

Before: BOONSTRA, P.J., and K. F. KELLY and MURRAY, JJ.

MURRAY, J.

This case involves the Estate of Wilma Francis Ketchum's attempt to preclude the state Department of Health and Human Services[1] from recovering from the estate certain amounts that it paid to the decedent, Wilma Ketchum, for Medicaid long-term care benefits during her lifetime. After defendant DHHS initially denied plaintiff estate's request for a hardship waiver, plaintiff requested an administrative hearing that resulted in a proposal for a decision recommending the denial be upheld, which defendant's director ultimately followed. Plaintiff then filed an appeal in the circuit court, which overturned DHHS's decision. We then granted DHHS's application for leave to appeal, *Estate of Ketchum v Dep't of Community Health*, unpublished order of the Court of Appeals entered April 10, 2015 (Docket No. 324741), limited to the issue raised in the application. MCR 7.205(E)(4). We now reverse.

## I. BACKGROUND FACTS AND PROCEEDINGS

"In 1965, Congress enacted Title XIX of the Social Security Act, commonly known as the Medicaid act. See 42 USC 1396 *et seq*. This statute created a cooperative program in which the federal government reimburses state governments for a portion of the costs to provide medical assistance to low-income individuals." *Mackey v Dep't of Human Servs*, 289 Mich App 688, 693; 808 NW2d 484 (2010). In 1993, Congress required states to implement Medicaid

---

[1] The Department of Community Health was merged with the Department of Human Services and is now known as the Department of Health and Human Services (DHHS). Executive Order No. 2015-4.

estate recovery programs. 42 USC 1396p(b). "The term 'estate recovery' refers to the provisions of federal law requiring states to attempt to recover payments made to healthcare providers on behalf of a Medicaid recipient from the recipient's estate after his or her death." Swanberg & Steward, *Medicaid Estate Recovery Update: What You Need to Know Now*, 93 Mich B J 28, 28 (May 2014). In 2007, the Michigan Legislature passed 2007 PA 74, which added MCL 400.112g though MCL 400.112k to the Michigan Social Welfare Act, MCL 400.1 *et seq*. This legislation empowered defendant to "establish and operate the Michigan Medicaid estate recovery program [MMERP] to comply with" 42 USC 1396p. MCL 400.112g(1). MCL 400.112g(5) required approval by the federal government before the estate recovery program would be implemented.

Specifically, MCL 400.112g(3) details what defendant had to seek federal approval for when it comes to a hardship exemption:

> (3) *The department of community health shall seek appropriate changes to the Michigan medicaid state plan and shall apply for any necessary waivers and approvals from the federal centers for medicare and medicaid services to implement the Michigan medicaid estate recovery program. The department of community health shall seek approval from the federal centers for medicare and medicaid regarding all of the following:*

> (a) Which medical services are subject to estate recovery under section 1917(b)(1)(B)(*i*) and (*ii*) of title XIX.

> (b) Which recipients of medical assistance are subject to estate recovery under section 1917(a) and (b) of title XIX.

> (c) Under what circumstances the program shall pursue recovery from the estates of spouses of recipients of medical assistance who are subject to estate recovery under section 1917(b)(2) of title XIX.

> (d) What actions may be taken to obtain funds from the estates of recipients subject to recovery under section 1917 of title XIX, including notice and hearing procedures that may be pursued to contest actions taken under the Michigan medicaid estate recovery program.

> (e) *Under what circumstances the estates of medical assistance recipients will be exempt from the Michigan medicaid estate recovery program because of a hardship. At the time an individual enrolls in medicaid for long-term care services, the department of community health shall provide to the individual written materials explaining the process for applying for a waiver from estate recovery due to hardship. The department of community health shall develop a definition of hardship according to section 1917(b)(3) of title XIX that includes, but is not limited to, the following:*

> (i) *An exemption for the portion of the value of the medical assistance recipient's homestead that is equal to or less than 50% of the average price of a*

*home in the county in which the medicaid recipient's homestead is located as of the date of the medical assistance recipient's death.*

(ii) An exemption for the portion of an estate that is the primary income-producing asset of survivors, including, but not limited to, a family farm or business.

(iii) A rebuttable presumption that no hardship exists if the hardship resulted from estate planning methods under which assets were diverted in order to avoid estate recovery.

(f) The circumstances under which the department of community health may review requests for exemptions and provide exemptions from the Michigan medicaid estate recovery program for cases that do not meet the definition of hardship developed by the department of community health.

(g) Implementing the provisions of section 1396p(b)(3) of title XIX to ensure that the heirs of persons subject to the Michigan medicaid estate recovery program will not be unreasonably harmed by the provisions of this program.

(4) The department of community health shall not seek medicaid estate recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state.

(5) The department of community health shall not implement a Michigan medicaid estate recovery program until approval by the federal government is obtained.

(6) The department of community health shall not recover assets from the home of a medical assistance recipient if 1 or more of the following individuals are lawfully residing in that home:

(a) The medical assistance recipient's spouse.

(b) The medical assistance recipient's child who is under the age of 21 years, or is blind or permanently and totally disabled as defined in section 1614 of the social security act, 42 USC 1382c.

(c) The medical assistance recipient's caretaker relative who was residing in the medical assistance recipient's home for a period of at least 2 years immediately before the date of the medical assistance recipient's admission to a medical institution and who establishes that he or she provided care that permitted the medical assistance recipient to reside at home rather than in an institution. As used in this subdivision, "caretaker relative" means any relation by blood, marriage, or adoption that is within the fifth degree of kinship to the recipient.

(d) The medical assistance recipient's sibling who has an equity interest in the medical assistance recipient's home and who was residing in the medical

assistance recipient's home for a period of at least 1 year immediately before the date of the individual's admission to a medical institution. [Emphasis added.]

The current state plan, approved by the federal government, provides the following regarding the definition of undue hardship:

The State defines undue hardship as follows:

An undue hardship exists when (1) the estate subject to recovery is the . . . PRIMARY income producing asset of the survivors (where such income is limited), including, but not limited to, a family farm or business; (2) the estate subject to recovery is a home of modest value or (3) the State's recovery of a decedent's estate would cause a survivor to become or remain eligible for Medicaid.

There is a presumption that no hardship exists if the hardship resulted from estate planning methods under which assets were diverted in order to avoid estate recovery. The agency will not grant an undue hardship waiver if the granting of such waiver results in the payment of claims to other creditors with a lower priority standing.

Home of modest value is defined as A HOME VALUED AT fifty percent (50%) or less of the average price of homes in the county where the homestead is located, as of the date of the beneficiary's death.

For individuals who apply for but do not meet the definition of undue hardship as found in MCL § 400.112g and provided above, the state will consider granting an exemption when a survivor who was residing in the deceased beneficiary's home continuously for at least two years immediately before the beneficiary's date of death, provided care that kept the deceased beneficiary out of an institution, even if the deceased beneficiary never entered an institution. This exemption will only be granted in circumstances where non-institutional long-term care services approved under the state plan were provided and only after the means test has been satisfied.

The State is following its own definition of undue hardship in accordance with [MCL] 400.112g(3)(e). When considering whether to grant an undue hardship waiver, a means test will be applied. West Virginia v. Thompson, 475 F3d 204. An applicant will satisfy the means test only if both of the following are true:

Total household income of the applicant is less than 200 percent of the poverty level for a household of the same size; and

Total household resources of the applicant do not exceed $10,000.

Undue hardship waivers are temporary. Undue hardship waivers expire when the conditions which qualified an estate, or a portion of an estate, for a waiver no longer exist.

-4-

The following standards and procedures are used by the State for waiving estate recoveries when recovery would cause an undue hardship, or when recovery is not cost-effective.

Review of hardship waivers begins with the State's vendor. The vendor, in accordance with its contract with the State, reviews all incoming waiver applications and makes an initial recommendation to accept or deny and sends it to the Estate Recovery Specialist.

* * *

The vendor will use the following criteria when making an initial undue hardship waiver recommendation:

whether the estate is the primary income-producing asset of the survivors

whether the estate is a home of modest value

whether the recovery from the estate will cause a survivor to become or remain eligible for Medicaid

whether an actual hardship exists after application of the means test.[2]

Finally, defendant's Bridges Administrative Manual 120 (BAM 120)—which essentially contains defendant's policies—states the following regarding the undue hardship exception to estate recovery:

Recovery may be waived if a person inheriting property from the estate can prove that recovery would result in an undue hardship. An application for an undue hardship must be requested by the applicant and returned with proper documentation in order for a hardship waiver to be considered. In order to qualify for a hardship exemption, an applicant must file the application with the department not later than 60 days from the date the department sends the Notice of Intent to the personal representative or estate contact. An undue hardship exemption is granted to the applicant only and not the estate generally.

Undue hardship waivers are temporary. Submitted applications will be reviewed by the department or its designee, and the department shall make a written determination on such application.

An undue hardship may exist when one or more of the following are true:

---

[2] State plan under title XIX of the Social Security Act, Attachment 4.17-A pp 2-3, available at <http://www.michigan.gov/mdhhs/0,5885,7-339-71547_4860-225474--,00.html> (accessed February 22, 2016).

The estate subject to recovery is the sole income producing asset of the survivors (where such income is limited), such as a family farm or business.

The estate subject to recovery is a home of modest value, see definition in this item.

The state's recovery of decedent's estate would cause a surviving heir to become or remain eligible for Medicaid.

When considering whether to grant an undue hardship the department shall apply a means test to all applicants to ensure that waivers are not granted in a way that is contrary to the intent of the estate recovery program under federal law.

An applicant for an undue hardship waiver will satisfy the means test only if both of the following are true:

Total household income of the applicant is less than 200 percent of the poverty level for a household of the same size as set in Reference Table Manual 246.

Total household resources of the applicant do not exceed $10,000.

Ketchum began receiving Medicaid long-term care services in November of 2010, which continued until her death on August 1, 2013. On September 21, 2013, the attorney for plaintiff's personal representative sent defendant a letter asserting "a complete exemption from estate recovery in this matter," because defendant had not provided adequate notice when Ketchum enrolled in Medicaid about estate recovery or about the process for applying for a hardship waiver. Defendant mailed the attorney hardship waiver applications and indicated that it would use the information provided in the application to determine whether plaintiff qualified for a waiver.

Three applications for a hardship waiver were subsequently completed, one for each of Ketchum's children, and in them they explained that although the applications were being completed, plaintiff and all three heirs were asserting a right to estate recovery exemption under MCL 400.112g(3)(e)(*i*). A settlement statement was also attached showing that plaintiff's house had been sold on September 25, 2013 for a gross amount of $30,000, and after fees associated with the sale, $28,670.64 was turned over in cash to plaintiff. Also attached was property information from Clinton County showing that fifty percent of the average value of residential property in the county was $65,179. Finally, a record from plaintiff's probate case[3] was attached

---

[3] The probate court case was consolidated with appeals from three other probate court orders involving the same issues, *In re Gorney Estate, et al*, unpublished order of the Court of Appeals entered May 20, 2015 (Docket Nos. 323090, 323185, 323304, and 326642), and the decision on those appeals was issued on February 4, 2016. See *In re Gorney Estate*, __ Mich App __; __ NW2d __ (2016) (Docket Nos. 323090, 323185, 323304 and 326642).

showing that plaintiff had disallowed defendant's claim for reimbursement of $129,703.63 in Medicaid benefits it had provided to Ketchum during her lifetime.

On December 27, 2013, defendant sent plaintiff a letter stating that "this estate does not meet the requirements for a hardship exemption because recovery will not cause the applicant to become or remain eligible for Medicaid." The letter further stated that estate recovery would continue and that plaintiff could request an administrative hearing to challenge the decision, which plaintiff did on January 19, 2014. On February 26, 2014, defendant sent three new letters[4] to each of Ketchum's children, setting forth a new and independent ground for the denial, stating that "this estate does not meet the requirements for a hardship exemption because the home has been sold and does not qualify as a home of modest value."

At the administrative hearing plaintiff argued that MCL 400.112g(3)(e) required defendant to grant it a hardship waiver because the home was valued at less than fifty percent of the average price of a home in Clinton County, that the denial was contrary to the definition of hardship in the BAM 120, that defendant's position was arbitrary and capricious, and that recovery was not cost effective. Defendant argued that the hardship waiver was properly denied because no home of modest value existed once the home was sold, and the administrative tribunal did not have jurisdiction to determine whether notice was adequately provided.

An administrative law judge issued a proposal for decision that recommended affirming defendant's decision to deny plaintiff a hardship exception because the home had been sold leaving plaintiff with "cash" in the estate and not a home of modest value. The proposal for decision also concluded that the administrative tribunal did not have jurisdiction to decide issues regarding whether notice was properly given or if recovery should be barred because it was not in the best economic interest of the state.

Plaintiff filed exceptions to the proposal for decision, arguing that it violated the clear meaning of "MCL 400.112g(e)(i),"[5] that by requiring a "means test" the BAM 120 does not conform to the governing statute, and that the BAM 120 requires defendant to look to the value of an estate's home on the date of a decedent's death regardless of whether it is sold after death. On April 24, 2014, the DHHS director entered a final order adopting the recommendation in the proposal for decision and denying the hardship exemption.

Plaintiff filed a claim of appeal in the circuit court, arguing the same issues it had during the administrative proceedings, i.e., that Ketchum did not receive adequate notice about estate recovery, that it was entitled to a hardship waiver from estate recovery for a home of modest value, and that defendant's denial was contrary to MCL 400.112g(3)(e)(i). Defendant in turn argued that plaintiff was collaterally estopped from arguing issues pertaining to notice, and that it had rationally interpreted the home of modest value waiver to no longer apply once a home is sold.

---

[4] The letters stated that they replaced "the letter that was sent in error on December 27, 2013."

[5] Presumably referring to MCL 400.112g(3)(e)(i).

After a hearing, the circuit court issued an opinion and order reversing defendant's denial of the hardship exemption. The court stated that the issue regarding notice had been resolved in an August 5, 2014 opinion and order from the probate court and that it could not rule on whether the probate court's decision was correct.[6] The circuit court went on to conclude that MCL 400.112g(3)(e)(*i*) required defendant to create an exemption for a homestead equal to or less than fifty percent of the average price of a home in the county and that this statutory directive "trumps any inconsistent administrative regulations, policies, or directives."

As noted, we granted leave to appeal, limited to the one issue raised in defendant's application, *Estate of Ketchum v Dep't of Community Health*, unpublished order of the Court of Appeals entered April 10, 2015 (Docket No. 324741),[7] which when reduced to a reasonable length, was did "the circuit court err when it concluded that MCL 400.112g(3)(e) created a statutory hardship exemption from estate recovery?"

## II. ANALYSIS

Defendant seeks reversal of the circuit court's decision that it was statutorily required to grant plaintiff a home of modest value hardship waiver. "[W]hen reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles" and whether its factual findings were clearly erroneous. *Boyd v Civil Serv Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). "[A] finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Id.* at 235. This Court reviews questions of statutory interpretation de novo. *Bush v Shabahang*, 484 Mich 156, 164; 722 NW2d 272 (2009).

Primarily at issue is the import of MCL 400.112g(3)(e)(*i*), which bears repeating:

> (3) *The department of community health shall seek appropriate changes to the Michigan medicaid state plan and shall apply for any necessary waivers and approvals from the federal centers for medicare and medicaid services to implement the Michigan medicaid estate recovery program. The department of community health shall seek approval from the federal centers for medicare and medicaid regarding all of the following:*

> \* \* \*

---

[6] But our Court could, and did, ruling that the estate did receive sufficient notice, contrary to what the probate court had held. *In re Gorney Estate*, __ Mich App at __; slip op at 6.

[7] Amicus curiae submitted a brief that addresses the issue upon which we granted leave, but also goes further and addresses an additional argument, relative to the cost effectiveness of pursuing estate recovery, that was not raised by either party in the application process. This amicus cannot do. See MCR 7.212(H)(2) and *Kinder Morgan Michigan LLC v City of Jackson*, 277 Mich App 159, 173; 744 NW2d 184 (2007).

(e) *Under what circumstances the estates of medical assistance recipients will be exempt from the Michigan medicaid estate recovery program because of a hardship. At the time an individual enrolls in medicaid for long-term care services, the department of community health shall provide to the individual written materials explaining the process for applying for a waiver from estate recovery due to hardship. The department of community health shall develop a definition of hardship according to section 1917(b)(3) of title XIX that includes, but is not limited to, the following:*

*(i) An exemption for the portion of the value of the medical assistance recipient's homestead that is equal to or less than 50% of the average price of a home in the county in which the medicaid recipient's homestead is located as of the date of the medical assistance recipient's death.*

*(ii) An exemption for the portion of an estate that is the primary income-producing asset of survivors, including, but not limited to, a family farm or business.*

*(iii) A rebuttable presumption that no hardship exists if the hardship resulted from estate planning methods under which assets were diverted in order to avoid estate recovery.*

"When faced with questions of statutory interpretation, [this Court's] obligation is to discern and give effect to the Legislature's intent as expressed in the words of the statute." *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). Words of a statute are to be given "their plain and ordinary meaning," *id.* which in part requires consideration of "the context in which the words are used," *Hyslop v Wojjusik*, 252 Mich App 500, 505; 652 NW2d 517 (2002), as well as the placement of words in the statutory scheme. *Herman v Co of Berrien*, 481 Mich 352, 366; 750 NW2d 570 (2008). "Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Farrington v Total Petroleum Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993).

"Pursuant to the Social Welfare Act (SWA), MCL 400.1 *et seq.*, the DCH is responsible for establishing and administering medical assistance programs in the state, including the Medicaid program." *Pharm Research & Mfrs of America v Dep't of Community Health*, 254 Mich App 397, 404; 657 NW2d 162 (2002). Given the "complex nature of the endeavor, the Legislature has delegated broad authority to the DCH to enable it to accomplish its statutory responsibilities." *Id.*

In *In re Keyes Estate*, 310 Mich App 266, 268; 871 NW2d 388 (2015), this Court concluded that in 2007 the Legislature amended the Social Welfare Act to require the DHHS to establish a Medicaid estate recovery program, but that it would not be implemented until approved by the federal government. Relative to MCL 400.112g(3)(e), the Court stated that that subsection "is part of the larger Subsection (3), which requires the Department to seek approval from the federal government regarding the items listed in the subdivisions." *Id.* at 272. The Court rejected the estate's argument that MCL 400.112g(3)(e) provided a specific requirement

that DHHS provide certain notices about estate recovery to Medicaid applicants, holding that § 112g(3)(e) simply required the department to seek approval of certain provisions from the federal government in developing the estate recovery program. *Id.*

Defendant argues that *Keyes* controls the disposition of this case, in that under the rationale of *Keyes*, MCL 400.112g(3)(e) merely required defendant to seek federal approval of certain provisions in the plan, *id.*, and therefore MCL 400.112g(3)(e)(*i*) (like all other subsections of MCL 400.211g(3)(e)) does not contain a binding mandate for defendant to grant a home of modest value exemption when the fifty percent threshold is shown. Plaintiff, on the other hand, argues that *Keyes* is distinguishable on its facts, and in particular because the provision at issue here-MCL 400.211g(3)(e)(*i*)-contains a more specific command for inclusion into the State Plan than does the statutory provision at issue in *Keyes*. *Keyes*, however, does not play as big a role in this case as the parties perceive.

The parties focus on the *Keyes* Court's recognition that "[s]ubsection (3)(e) is part of the larger Subsection (3), which requires the Department to seek approval from the federal government regarding the items listed in the subdivisions." *Keyes*, 310 Mich App at 272. *Keyes* was, of course, correct in that the notice language within subsection (3)(e) does not itself constitute the state notice provision, as that subsection simply directs the DHHS to submit a state plan containing a notice requirement. In fact, the *Keyes* Court emphasized the directive nature of the statutory language as one means of distinguishing between the two notice provisions contained in subsections (3)(e)&(7), see *id.* at 272-273, but that court did not address the issues presented here, i.e., whether the requirements within the subsections of (3)(e) must be placed into the state plan that is submitted for approval, and whether DHHS could *add* additional provisions to those exemptions.

As *Keyes* recognized, subsection (3)(e) makes clear that any specifics contained in subsections (3)(e)(*i*)-(*iii*) *are required* to be included in the state plan submitted for approval, but just as importantly, that subsection also specifies that the department is "not limited to" including just those provisions. In other words, and as plaintiff argues, the Legislature clearly intended through the language in (3)(e) to require that any state plan submitted for federal approval contain the substantive requirements set forth in subsections (*i*)-(*iii*). But in that same subsection the Legislature also provided express language ("including, but not limited to") granting the DHHS discretion to include *other* requirements for the hardship exemption.[8] And, DHHS did

---

[8] Amicus curiae's argument surrounding the meaning of MCL 400.112g(3)(e) includes resort to the contents of a Senate Fiscal Agency Analysis. However, we do not resort to legislative history when the text of the statute is clear. *Chmielewski v Xermac Inc*, 457 Mich 593, 608; 580 NW2d 817 (1998). Amicus curiae also asserts that defendant failed to comply with MCL 400.112g(3)(e) because it failed to specifically seek approval for the language in MCL 400.112g(3)(e)(*i*) from the federal government. However, there is no documentation in the record concerning what documents or requests defendant sent to the Center for Medicare and Medicaid Services. Additionally, to the extent that defendant failed to perform a clear legal duty that did not involve an exercise of discretion or judgment and plaintiff had a clear right to the

-10-

just that, as there is no dispute that the State Plan submitted and approved contained both the requirements set forth in subsection (3)(e)(*i*)-(*iii*), as well as additional criteria—such as the temporal requirement for hardship waivers—that will be discussed below. Consequently, helpful as the language in *Keyes* may be regarding the general framework of (3)(e), it is not dispositive to resolving this case because the state plan *did* include the requirements of (3)(e)(*i*)-(*iii*), as well as additional permissible provisions. The question in this case is whether the estate met those additional requirements.

The state plan, as contained on defendant's website, and which has an effective date of April 1, 2012, after Ketchum's death, states:

The State Plan defines undue hardship as follows:

An undue hardship exists when (1) the estate subject to recovery is the . . . PRIMARY income producing asset of the survivors (where such income is limited), including, but not limited to, a family farm or business; (2) the estate subject to recovery is a home of modest value or (3) the State's recovery of a decedent's estate would cause a survivor to become or remain eligible for Medicaid.

\* \* \*

Home of modest value is defined as A HOME VALUED AT fifty percent (50%) or less of the average price of homes in the county where the homestead is located, as of the date of the beneficiary's death.

For individuals who apply for but do not meet the definition of undue hardship as found in MCL § 400.112g and provided above, the state will consider granting an exemption when a survivor who was residing in the deceased beneficiary's home continuously for at least two years immediately before the beneficiary's date of death, provided care that kept the deceased beneficiary out of an institution, even if the deceased beneficiary never entered an institution. This exemption will only be granted in circumstances where non-institutional long-term care services approved under the state plan were provided and only after the means test has been satisfied.

The State is following its own definition of undue hardship in accordance with [MCL] 400.112g(3)(e). When considering whether to grant an undue hardship waiver, a means test will be applied. West Virginia v Thompson, 475 F3d 204. An applicant will satisfy the means test only if both of the following are true:

_____

performance of that duty, the remedy would be an action for mandamus. *Tuscola Co Abstract Co v Tuscola Co Register of Deeds*, 206 Mich App 508, 510; 522 NW2d 686 (1994).

Total household income of the applicant is less than 200 percent of the poverty level for a household of the same size; and

Total household resources of the applicant do not exceed $10,000.

*Undue hardship waivers are temporary. Undue hardship waivers expire when the conditions which qualified an estate, or a portion of an estate, for a waiver no longer exist.*

The following standards and procedures are used by the State for waiving estate recoveries when recovery would cause an undue hardship, or when recovery is not cost-effective.

Review of hardship waivers begins with the State's vendor. . . .

* * *

The vendor will use the following criteria when making an initial undue hardship waiver recommendation:

whether the estate is the primary income-producing asset of the survivors

whether the estate is a home of modest value

whether the recovery from the estate will cause a survivor to become or remain eligible for Medicaid

whether an actual hardship exists after application of the means test.

Defendant denied the hardship waiver on the basis that the home (which no one disputes was of modest value at the time of Ketchum's death) had been sold prior to when the application was submitted. Although plaintiff is correct that nothing in the state plan or in the BAM 120 *explicitly* states that once a home is sold the home of modest value hardship waiver can no longer be obtained, it does state that "[u]ndue hardship waivers are temporary," and that the "[u]ndue hardship waiver[] expire[s] when the conditions which qualified an estate, or a portion of an estate, for a waiver no longer exist." Under these provisions, once a home of modest value is sold and converted to cash, an estate no longer has a home of modest value as an asset; it has cash. Therefore, defendant is correct that, once the home has been turned to cash, the condition that caused the undue hardship, the presence of a home of modest value, no longer exists and the ability to obtain an undue hardship waiver necessarily expires.

Moreover, this time element does not conflict with the commands of MCL 400.112g(3)(e)(*i*), as this DHHS policy provision was (as required by statute) submitted to and approved by federal authorities, and falls within the broad "including but not limited to" language contained within MCL 400.112g(3)(e). Clearly, the Legislature approved of the DHHS implementing additional provisions on this issue, so long as it was submitted to and approved by the appropriate federal authorities. Thus, the executive branch has not ventured beyond the role

given to it by the legislature. See *Detroit Edison Co v Dep't of Treasury*, 498 Mich 28, 46; 869 NW2d 810 (2015).[9]

Additionally, nothing within MCL 400.112g(3)(e)(*i*) prevents the implementation of the temporal requirement on hardship waivers. The plain language of that subsection references the recipient's date of death for valuation purposes, not, as plaintiff argues, to preserve in perpetuity the ability to utilize the modest home value exemption.

Finally, plaintiff and amicus curiae argue that defendant is precluded from pursuing estate recovery against plaintiff because MCL 400.112g(4) states that defendant "shall not seek medicaid estate recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interests of the estate" and that, because plaintiff has modest assets to begin with, after payment of higher priority claims, plaintiff will only have a meager amount to turn over to defendant if it is able to collect. However, this issue (1) was not raised in defendant's application, and (2) does not concern whether defendant was required to grant plaintiff a hardship exemption. Instead, it concerns whether defendant *should have* pursued a claim against plaintiff. It is not a matter to be decided on an appeal from an administrative decision to deny plaintiff a hardship waiver, especially when it was not raised in the application for leave to appeal. MCR 7.205(E)(4).

Reversed and remanded for entry of an order granting summary disposition to defendant. No costs to either side, a question of public importance being involved.

/s/ Christopher M. Murray
/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly

---

[9] Plaintiff argues that the fourth paragraph of the state plan only requires a means test for applicants who do not meet one of the three listed criteria in the initial paragraph under heading number 4, which states that "For individuals who apply but do not meet the definition of undue hardship as found in MCL § 400.112g and provided above, the State will consider granting an exemption." This issue does not fall within the issue upon which we granted leave to appeal. In any event, the relevant language also indicates that it concerns an exemption for a person who resided in the decedent's home and provided care for the decedent to keep the decedent out of an institution. That is not the situation presented in this case.