*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SOARING PINE CAPITAL REAL ESTATE AND
DEBT FUND II, LLC,

        Plaintiff/Counterdefendant-Appellee,

v

PARK STREET GROUP REALTY SERVICES,
LLC, PARK STREET GROUP, LLC, and DEAN J.
GROULX,

        Defendants/Counterplaintiffs-
        Appellants.

FOR PUBLICATION
June 10, 2021
9:05 a.m.

No. 349909
Oakland Circuit Court
LC No. 2018-163298-CB

SOARING PINE CAPITAL REAL ESTATE AND
DEBT FUND II, LLC,

        Plaintiff/Counterdefendant-Appellant,

v

PARK STREET GROUP REALTY SERVICES,
LLC, PARK STREET GROUP, LLC, and DEAN J.
GROULX,

        Defendants/Counterplaintiffs-
        Appellees.

No. 350159
Oakland Circuit Court
LC No. 2018-163298-CB

Before: MURRAY, C.J., and JANSEN and STEPHENS, JJ.

MURRAY, C.J.

-1-

In these consolidated appeals[1] involving a contract dispute and allegations of usury, in Docket No. 349909, defendants, Park Street Group Realty Services, LLC (PSGRS), Park Street Group, LLC (PSG), and Dean J. Groulx, appeal by leave granted[2] the June 27, 2019 order of the trial court granting in part and denying in part defendants' motion for summary disposition under MCR 2.116(C)(10). In Docket No. 350159, plaintiff, Soaring Pine Capital Real Estate and Debt Fund II, LLC, also appeals by leave granted[3] the same order of the trial court. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Groulx, the sole owner of PSGRS and an operating member of PSG, is a licensed attorney. In 2015, he began discussions with plaintiff about receiving a loan that would provide defendants operating capital for their business flipping tax-foreclosed homes. In July 2016, plaintiff prepared a presentation to convince its investors that the loan would be profitable, noting that plaintiff planned to obtain a 5% "upfront fee," 20% interest, and success fees of $1,000 per sale. Plaintiff projected that the loan would "yield a cash-on-cash return of 37.4% and an [internal rate of return (IRR)] of 36.5%."

Plaintiff agreed to loan $500,000 to PSGRS, which was guaranteed by PSG and Groulx, personally. On September 23, 2016, a second tranche of $500,000 was disbursed to PSGRS, an amended loan agreement was signed, and an updated mortgage was provided on properties owned by PSG to secure repayment of the loan. Before that occurred, though, plaintiff issued another proposal to its investors reflecting that the total $1 million loan was "projected to yield a cash-on-cash return of 31.4% and an IRR of 29.6%." Despite there being two separate tranches of loan money, and two sets of documents, the terms relevant to this appeal were the same in all of the documents.

The mortgage note stated that "[i]nterest on the outstanding principal amount of the Loan shall accrue interest [sic] at the Interest Rate of Twenty Percent (20.00%) ('Interest') per annum[.]" PSGRS was also required to pay a "Commitment Fee," listed as $25,000 and due at each closing—$50,000 in total. PSGRS had the responsibility to pay "all closing costs, including by way of description and not limitation, reasonable attorneys' fees incurred by [plaintiff] in connection with the consummation and closing of the Loan." As part of repayment, PSGRS was not required to pay anything for the first two months, but the interest still accrued and would "be capitalized and added to the loan balance . . . ." After that, PSGRS was to make monthly payments on the principal of the loan, with a final "balloon payment of the remaining outstanding principal balance of the Loan, plus all accrued and unpaid Interest," due one year after the loan agreement and mortgage

---

[1] *Soaring Pine Capital Real Estate & Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, unpublished order of the Court of Appeals, entered October 30, 2019 (Docket No. 349909); *Soaring Pine Capital Real Estate & Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, unpublished order of the Court of Appeals, entered October 30, 2019 (Docket No. 350159).

[2] *Soaring Pine Capital Real Estate & Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, unpublished order of the Court of Appeals, entered October 30, 2019 (Docket No. 349909).

[3] *Soaring Pine Capital Real Estate & Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, unpublished order of the Court of Appeals, entered October 30, 2019 (Docket No. 350159).

note were signed. Because the loan proceeds were to be used by PSGRS to purchase homes, renovate them, and sell them, the loan agreement contained a clause requiring that, "[u]pon consummation of a Home Sale, [PSGRS] shall to pay to [sic] [plaintiff] a success fee in the amount of One Thousand and 00/100 Dollars ($1,000.00) per home or lot sold ('Success Fee')." Importantly, the last relevant term of the contract was a usury-savings clause, which provided that if the interest rate under the contract was determined to be usurious, it would revert to the maximum legal interest rate. Groulx signed all of the mortgages, notes, and guaranties on behalf of PSGRS, PSG, and himself.

After paying plaintiff more than $140,000 in interest, defendants stopped paying on the loans in July or August 2017. In December 2017, plaintiff issued Groulx a demand for payment with the threat of a lawsuit. The demand contained a summary of the amounts still owed— $1,029,811.74 in principal; $34,337.06 in interest through the date of maturity; $67,223.82 in default interest, which would continue to accrue at $715.15 per day; $70,000 in success fees; and $6,153.86 in attorney fees. That gave a total due of $1,207,562.48 as of December 26, 2017, with the interest paid to date and the interest sought in the demand letter constituting 23.4% interest.

When defendants still did not pay, plaintiff filed suit in January 2018. After a lengthy procedural history and discovery period, plaintiff's second amended complaint contained three breach-of-contract claims, one each against PSGRS, PSG, and Groulx; and two claims of fraud. Plaintiff alleged that defendants had made misrepresentations about the businesses and the people involved in the businesses to fraudulently induce plaintiff into giving the loan. Defendants, meanwhile, counterclaimed that plaintiff breached a contract to give $2 million by only providing $1 million, and committed fraud.

After considering a number of different motions for summary disposition, the trial court heard defendants' motion that the wrongful-conduct rule precluded the breach-of-contract claims where the contracts violated the criminal-usury statute, MCL 438.41, by charging an effective interest rate above 25% simple interest per annum. Defendants' arguments relied on allegations that the "commitment fees," "success fees," and two months of compound interest should be considered hidden interest and incorporated to determine the actual interest charged. Defendants supported that argument with an affidavit from an accounting expert, John Fiorrito, C.P.A., in which he averred that the planned rate of return for plaintiff corresponded with a rate of 36.5% simple interest per annum.

Plaintiff argued that the criminal-usury statute was not applicable for a variety of reasons, including that the usury-savings clause had to be enforced as written, and that the claimed instances of hidden interest should not be included in the calculation of interest. Plaintiff insisted that the trial court was required only to consider that the contract stated a rate of 20% simple interest per annum, which was not criminally usurious. Lastly, plaintiff contended that, even if the contract was determined to be criminally usurious, the remedy was to bar plaintiff from collecting interest only. In other words, plaintiff argued that it should still be permitted to collect the $1 million principal of the loan.

The trial court ultimately agreed with defendants that the contract provided for a criminally usurious interest rate. However, the trial court declined to apply the wrongful-conduct rule to bar plaintiff's collection of the principal of the loan, holding that there was not a sufficient causal

nexus between plaintiff's illegal behavior and the claims. The trial court ordered that an upcoming trial would take place on the amount owed, but that plaintiff would not be permitted to introduce evidence of defendants' alleged fraud. These appeals followed.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

During the trial court proceedings, the parties presented arguments under both MCR 2.116(C)(8) and (C)(10). Because the trial court did not specifically state under which rule the motions were being decided and relied on evidence outside of the pleadings, this issue is appropriately reviewed under (C)(10). "This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id.* "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted).

"Questions of statutory interpretation are also reviewed de novo." *Rowland v Washtenaw Co Road Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). "Insofar as the motion for summary disposition involves questions regarding the proper interpretation of a contract, this Court's review is de novo." *Johnson v USA Underwriters*, 328 Mich App 223, 233; 936 NW2d 834 (2019).

### B. CRIMINAL-USURY STATUTE AND USURY-SAVINGS CLAUSE

Plaintiff argues that the criminal-usury statute, MCL 438.41, does not apply because of a certain statutory exception, the language of the criminal-usury statute itself, and the existence of the usury-savings clause. Only the latter argument is properly before us.

### 1. WAIVED ARGUMENTS

Plaintiff's first argument is that the trial court's decision must be reversed because the exception in MCL 438.31c(11) makes the criminal-usury statute inapplicable. Plaintiff, however, did not make that argument in any of its briefs regarding summary disposition, so the issue is unpreserved. "Generally, an issue is not properly preserved if it is not raised before, addressed, or decided by the circuit court or administrative tribunal." *Marik v Marik*, 325 Mich App 353, 358; 925 NW2d 885 (2018) (quotation marks and citation omitted). Second, plaintiff asserts that the criminal-usury statute does not apply to it because it uses the word "person" to describe who could be guilty of the crime, MCL 438.41, and plaintiff is not a "person." But, as before, plaintiff did not make this argument to the trial court, and therefore it is not preserved for our review. *Marik*, 325 Mich App at 358.

Plaintiff's failure to preserve those arguments results in their waiver. "Michigan generally follows the 'raise or waive' rule of appellate review." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008), citing *Napier v Jacobs*, 429 Mich 222, 228; 414 NW2d 862 (1987). "Although this Court has inherent power to review an issue not raised in the trial court to prevent a miscarriage of justice, generally a failure to timely raise an issue waives review of that issue on appeal." *Walters*, 481 Mich at 387 (quotation marks and citations omitted). "By limiting appellate review to those issues raised and argued in the trial court, and holding all other issues waived, appellate courts require litigants to raise and frame their arguments at a time when their opponents may respond to them factually." *Id*. at 388. "Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention." *Id*., citing *Kinney v Folkerts*, 84 Mich 616, 625; 48 NW 283 (1891). Thus, because plaintiff failed to raise those arguments to the trial court, they are waived and we decline to consider them.[4]

## 2. APPLICABILITY AND ENFORCEABILITY OF THE USURY-SAVINGS CLAUSE

Turning now to plaintiff's preserved argument, plaintiff argues that the criminal-usury statute was not violated because the usury-savings clause precluded the contract from having an unlawful interest rate. Stated differently, this argument presents a simple question: does a contract that essentially states "we agree not to charge or receive any interest above that legally permitted," prevent a court from invalidating that contract as violative of public policy (the criminal-usury statute) when the actual interest rate exceeds the statutory maximum?[5]

The question presented is simple, and given the contract language and Michigan law, so too is the answer. On the one hand, we have well-settled law that contracts that require performance of an act in violation of public policy (as announced by the Legislature or, at times, the executive) cannot be enforced by the courts. See *Morris & Doherty, PC v Lockwood*, 259 Mich App 38, 54-55; 672 NW2d 884 (2003). And pertinent to this case, MCL 438.41 makes it a crime (with limited exceptions) if a person charges, takes, or receives interest at a rate above 25% per annum:

> A person is guilty of criminal usury when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding 25% at simple interest per annum or the equivalent rate for a longer

---

[4] Separately, plaintiff's argument regarding MCL 438.31c(11) is not properly before this Court because plaintiff did not raise it in its application for leave to appeal or the supporting brief, and our order granting leave limited the issues to those raised in the application and supporting brief. We therefore decline to consider the issue. MCR 7.205(E)(4); *Ketchum Estate v Dep't of Health & Human Servs*, 314 Mich App 485, 506-507; 887 NW2d 226 (2016).

[5] Whether the criminal-usury statute is rendered inapplicable by a usury-savings clause has not been addressed by this Court in a published opinion. But see *Karel v JRCK Corp*, unpublished per curiam opinion of the Court of Appeals, issued May 10, 2012 (Docket No. 304415), p 3-4 (wrongful-conduct rule did not bar claim based on a promissory note that contained a usurious rate, but was not facially usurious).

or shorter period. Any person guilty of criminal usury may be imprisoned for a term not to exceed 5 years or fined not more than $10,000.00, or both.

The purpose of Michigan's usury statute "is to protect the necessitous borrower from extortion." *People v Lee*, 447 Mich 552, 556-557; 526 NW2d 882 (1994) (quotation marks and citation omitted). "In the accomplishment of this purpose a court must look squarely at the real nature of the transaction, thus avoiding, so far as lies within its power, the betrayal of justice by the cloak of words, the contrivances of form, or the paper tigers of the crafty. We are interested not in form or color but in nature and substance." *Wilcox v Moore*, 354 Mich 499, 504; 93 NW2d 288 (1958).

On the other hand, it is equally settled that courts must enforce the language adopted by the parties to a contract, and give effect to all parts of that contract. As was recently restated in *Barshaw v Allegheny Performance Plastics, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 350279); slip op at 3 (citations omitted):

> Thus, we begin our analysis by examination of the core principles of contract interpretation:
>
> > In interpreting a contract, our obligation is to determine the intent of the contracting parties. If the language of the contract is unambiguous, we construe and enforce the contract as written. Thus, an unambiguous contractual provision is reflective of the parties' intent as a matter of law. Once discerned, the intent of the parties will be enforced unless it is contrary to public policy.

See also *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 326 Mich App 684, 695; 930 NW2d 416 (2019). When enforcing the unambiguous language of a contract, we must "give effect to every word or phrase as far as practicable," *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003) (quotation marks and citations omitted), so as to "avoid an interpretation that would render any part of the contract surplusage or nugatory." *Id*. at 468.

The usury-savings clause appears in the mortgage notes, and states:

**5. Interest Limitation.**

> Nothing herein contained, nor any transaction relating thereto, or hereto, shall be construed or so operate as to require [PSGRS] to pay, or be charged, interest at a greater rate than the maximum allowed by the applicable law relating to this Note. Should any interest or other charges, charged, paid or payable by [PSGRS] in connection with this Note, or any other document delivered in connection herewith, result in the charging, compensation, payment or earning of interest in excess of the maximum allowed by the applicable law as aforesaid, then any and all such excess shall be and the same is hereby waived by the holder, and any and all such excess paid shall be automatically credited against and in reduction of the principal due under this Note. If [plaintiff] shall reasonably determine that the interest rate applicable to this Note (together with all other charges or payments related hereto that may be deemed interest) stipulated under this Note is, or may be, usurious or otherwise limited by law, the unpaid balance of this Note, with accrued

interest at the highest rate then permitted to be charged by stipulation in writing between [plaintiff] and [PSGRS], at the option of [plaintiff], shall become due and payable thirty (30) days from the date of such determination.

The language of this clause is unambiguous, and will be enforced as written. *Barshaw*, ___ Mich App at ___; slip op at 3. So too will the remainder of the mortgage note, which neither party suggests is otherwise ambiguous. And, under that contract, it is undisputed that the interest rate to be charged and paid is specified to be 20%, well below the statutory maximum. Additionally, the plain language of the savings clause expresses the parties' intention *not* to have defendants charged with, or pay, interest above the maximum rate allowed by law. In other words, to abide by Michigan law. It likewise provides that if the "interest or other charges" are determined to exceed "the maximum allowed by the applicable law," then all of the excess charges are "waived by [plaintiff]," and those that had already been collected would be applied to the principal of the loan. To conclude that the mortgage note was facially usurious, when it plainly states a 20% rate and an intention not to charge or collect a rate above that allowed by law, would render the usury-savings clause surplusage. This we cannot do. *Klapp*, 468 Mich at 468. Consequently, on its face the mortgage note is not violative of the public policy stated in MCL 438.41.

The federal bankruptcy court sitting in Detroit came to the same conclusion under similar circumstances in *In re Skymark Properties II, LLC*, 597 BR 363 (Bankr ED Mich, 2019). There, an allegation was made that a promissory note contained an unlawful interest rate because, when combined, the charging interest and default interest exceeded 25%. *Id*. at 390. The court disagreed, concluding that a usury-savings clause in the note "necessarily means that the interest charged under the Promissory Note cannot exceed the maximum amount permitted by law." *Id*. Because the parties agreed to never charge or collect interest above that permitted by MCL 438.41, the note was not usurious. *Id*. We agree with this conclusion, and hold that the note was not usurious on its face because the parties evinced a clear intent not to charge or pay a rate of interest above that allowed by law.

Other courts have likewise concluded that a contract containing a usury-savings clause, coupled with a stated interest rate at or below the statutory maximum, is not usurious on its face. See, e.g., *In re Dominguez,* 995 F2d 883, 886 (CA 9, 1993) ("Because the interest rate required to be paid under the extension agreement was determined in part by the savings clause, we cannot conclude that the agreement is usurious on its face."); *Woodcrest Assoc, Ltd v Commonwealth Mtg Corp*, 775 SW2d 434, 437-438 (Tex App, 1989) (usury-savings clauses are enforced to defeat a violation of usury laws, but the terms must be construed as a whole and in light of all the circumstances); *Jersey Palm-Gross, Inc v Paper*, 658 So 2d 531, 535-536 (Fla, 1995) (usury-savings clauses should be enforced in appropriate circumstances); *Video Trax, Inc v NationsBank, NA*, 33 F Supp 2d 1041, 1058 (SD Fla, 1998) (presence of usury-savings clause established that lender lacked intent to assess a usurious interest rate). But see *NV One, LLC v Potomac Realty Capital, LLC*, 84 A3d 800, 810 (RI, 2014) (declaring usury-savings clauses "unenforceable as against the well-established public policy of preventing usurious transactions.").

As recognized by the *Jersey Palm-Gross* court, there are legitimate purposes of a usury-savings clause:

However, we also believe that savings clauses serve a legitimate function in commercial loan transactions and should be enforced in appropriate circumstances. For instance, we agree with Judge Pariente's illustration, in the majority opinion below, of the proper utilization of a savings clause:

> Where the actual interest charged is close to the legal rate, or where the transaction is not clearly usurious at the outset but only becomes usurious upon the happening of a future contingency, the clause may be determinative on the issue of intent. [*Jersey Palm-Gross, Inc*, 658 So 2d at 535 (citation omitted).]

By enforcing the usury-savings clause, we give effect to the express intentions of the parties, while enforcing the public policy as outlined in the usury laws. Because of the savings clause, the contract does not "charge" a usurious rate of interest. Nonetheless, as discussed below, the trial court properly found that some of the "fees" within the contract were in actuality additional interest charges, placing at issue whether plaintiff was seeking to "take or receive" monies from defendants as interest that exceeds the statutory maximum, despite (and contrary to) the savings clause.[6]

### 3. CALCULATION OF INTEREST AND APPLICATION OF MCL 438.41

Although the parties contractually agreed to comply with state usury laws, the trial court found that plaintiff had in fact attempted, through this lawsuit, to collect more than a 25% interest rate, contrary to the contract and state law. Plaintiff argues that the trial court improperly calculated the interest rate and, therefore, improperly applied the criminal-usury statute to preclude the collection of interest.

The parties do not dispute that the loan, mortgage, and guaranty documents show mutual assent for defendants to repay the $1 million loan to plaintiff, plus interest and fees. *Law Offices of Jeffrey Sherbow PC*, 326 Mich App at 695. Instead, the disagreement exists regarding whether

---

[6] It is certainly possible that unscrupulous lenders could take advantage of borrowers by including within a contract a usury-savings clause while still seeking to collect unlawful interest, with the hope (and perhaps expectation) that the unlawful rates will be paid by the borrower and not be challenged in court. But under the common law of contracts and the statute as written, these clauses are permissible. Moreover, even though the parties to this contract were of equal bargaining power, the plain language of MCL 438.41 and MCL 438.61(2) and (3) is clear—plaintiff was not excused from the criminal-usury statute because it made the loan to a business entity. These statutes do not contain an exception for the parties under this contract. Moreover, the Legislature, under the Michigan Limited Liability Company (LLC) Act, MCL 450.4101 *et seq.*, also refused to allow entities formed as LLCs to be excused from the criminal-usury statute. See MCL 450.4212 ("A domestic or foreign limited liability company, whether or not formed at the request of a lender, may agree in writing to pay any rate of interest as long as that rate of interest is not in excess of the rate set forth in [MCL 438.41 to MCL 438.42.]").

plaintiff sought to recover certain fees set forth in the contract that were actually interest charges that, when combined with the 20% interest figure, exceeded the criminally usurious interest rate.

As noted, MCL 438.41 proscribes a person from "knowingly charg[ing], tak[ing] or receiv[ing] any money or other property as interest on the loan . . . at a rate exceeding 25% at simple interest per annum or the equivalent rate for a longer or shorter period." *Id.* The Legislature did not define the term "interest," but caselaw has provided some guidance. "Interest is compensation allowed by law or fixed by the respective parties for the use or forbearance of money, a charge for the loan or forbearance of money, or a sum paid for the use of money, or for the delay in payment of money." *Town & Country Dodge, Inc v Dep't of Treasury*, 420 Mich 226, 242; 362 NW2d 618 (1984) (quotation marks and citations omitted). "Under generally understood and applied principles, it [interest] is merely an incident of the principal and must be accounted for." *Balch v Detroit Trust Co*, 312 Mich 146, 152; 20 NW2d 138 (1945) (quotation marks and citation omitted). In the simplest terms, "[i]nterest is paid for the use of money." *Coon v Schlimme Dairy Co*, 294 Mich 51, 56; 292 NW 560 (1940).

Turning now to whether the trial court properly calculated the actual interest rate, the parties agree that the contract states that the interest rate on the $1 million total loan was 20% simple interest per annum. Plaintiff insists that the trial court's analysis should have stopped there, because that was the only interest amount agreed to be charged. For their part, defendants argue that the trial court properly looked beyond the specified rate of "interest" in the contract and considered certain fees charged by plaintiff to be interest charges.

In deciding this issue, we first examine the meaning of "per annum." Notably, under the statute, the term 25% "per annum" relates to an interest rate *per year*, but it also applies to calculations of "the equivalent rate for a longer or shorter period." MCL 438.41. The contract, like the statute, also uses the term "per annum," but the contract defines the time period by which that "per annum" would be calculated as "the actual number of days elapsed *on the basis of a three hundred sixty (360) day year* . . . ." Considering the contract provides for a time period shorter than an actual year, the rate of 20% must be adjusted under the statute to determine "the equivalent rate for a longer or shorter period." MCL 438.41. It is a mathematical certainty that a 20% rate charged for 360 days would be higher than for a 365-day period, as the entire 20% would be incurred after 360 days, leaving five additional days on which interest would accrue. Although there may be cases where the actual calculation of that rate is relevant, this case is not one of them. It is enough, as will be explained shortly, that the effective interest rate for the purposes of MCL 438.41 is slightly above 20%.[7]

With that background, we next address the parties' disagreement over whether other contractual fees should be considered interest for purposes of the criminal-usury statute. As noted earlier, interest is "a charge for the loan or forbearance of money, or a sum paid for the use of money, or for the delay in payment of money." *Town & Country Dodge*, 420 Mich at 242 (quotation marks and citations omitted). In determining what constitutes such a charge, we are not bound by the contract's description, as "a court must look squarely at the real nature of the transaction, thus avoiding, so far as lies within its power, the betrayal of justice by the cloak of

---

[7] As noted, the interest sought in the December 2017 demand letter reflected a 23.4% rate.

words, the contrivances of form, or the paper tigers of the crafty." *Wilcox*, 354 Mich at 504. Michigan courts "are interested not in form or color but in nature and substance." *Id*. And that is why this Court has recognized that Michigan courts "must look beyond form to characterize the real nature of the transaction in order to determine whether the transaction falls within the usury statute." *Paul v US Mut Fin Corp*, 150 Mich App 773, 780; 389 NW2d 487 (1986). Under these decisions, the trial court properly looked beyond the simple interest rate per annum stated in the contract to determine the *actual* interest rate that plaintiff was seeking to receive from defendants.

Of particular importance to this calculation was plaintiff's charge of a $50,000 fee, disbursed in two $25,000 payments when each of the $500,000 tranches were released to PSGRS. Plaintiff argues that the $50,000 fee should not be counted as interest because it was a commitment fee. We held in *Fed Deposit Ins Corp v Kramer*, 100 Mich App 495, 497; 298 NW2d 755 (1980), that a commitment fee was not interest when it "was paid more than 3 weeks prior to the loan," and "[i]n consideration of that fee, the lender bound itself for 115 days to loan to the defendants $110,000 at $6^3/4\%$ interest if defendants applied therefor." The Court reasoned that, because the fee "was a separate transaction distinct from the loan," it was not hidden or disguised interest. *Id*. The implication, though, is that a "commitment fee" that was not paid in advance of the loan, did not bind the lender to give the loan at a future date, and was not a separate transaction from the actual loan, would be considered hidden interest. *Id*.

Such was the case here, where it is not disputed that the $50,000 "commitment fee" was paid by defendants at the time the loan principal was disbursed, did not bind plaintiff to give the loan at a distinct interest rate, and was not a separate transaction from the loan itself. Indeed, in plaintiff's proposal to investors, the $50,000 fees were referred to as a 5% "upfront fee." Therefore, in looking beyond the use of the term "commitment fee" in order to determine the actual nature of the transaction, *Wilcox*, 354 Mich at 504, we conclude that the $50,000 fee was interest at a rate of 5% simple per annum.

Plaintiff attempts to escape this conclusion by arguing that the $50,000 was actually for acceptable fees and costs under the civil-usury statute. MCL 438.31a. Under that statute, "[r]easonable and necessary charges" that "consist of recording fees; title examination or title insurance; the preparation of a deed, appraisal, or credit report; plus a loan processing fee," are not considered interest. *Id*. The problem with this argument is that the contract already required PSGRS to pay all of those fees, and plaintiff actually charged them. In fact, the loan agreement provides that PSGRS was responsible for the closing costs which were made up of title searches, title insurance, and recording fees, and amounted to over $14,000 according to Fioritto's uncontroverted analysis of the loan documents. There was also a separate charge for plaintiff's legal fees of $14,000. Nothing in the record suggests that the $50,000 fee charged at the time the loan was made was used to pay those fees. Instead, as reflected in plaintiff's own internal documentation, the $50,000 amounted to a profit intended to be earned by plaintiff in the form of an upfront fee. Thus, plaintiff's arguments that the $50,000 should be considered a "commitment fee" or a charge for fees and costs arising out of the loan, are without merit. Consequently, the $50,000 fee was actually interest.

When taking the $50,000 fee into account as interest, as explained by Fioritto, the rate sought by plaintiff moves to over 25% simple interest per annum, as proscribed by the criminal-usury statute. MCL 438.41. Thus, considering the earlier conclusion that the stated rate of 20%

per annum in the contract was actually *slightly above* 20% in light of the fact that the contract used 360 days as the length of a year, the additional 5% from the "commitment fees" puts the total effective rate above 25%.

Therefore, there is no material factual dispute that in seeking to "take or receive" interest from defendants through collection of the interest and hidden interest, plaintiff acted contrary to the criminal-usury statute, and the trial court did not err when it granted summary disposition in favor of defendants.[8]

## C. WRONGFUL-CONDUCT RULE

The contract itself, with the 20% interest rate and associated fees that were, in fact, also interest, did not allow the court to invoke the wrongful-conduct rule, as the savings clause limited plaintiff to charging no more than the legal maximum rate. Where plaintiff went astray, however, was seeking to collect ("take or receive") through this lawsuit an effective interest rate above the statutory maximum. In other words, although the contract was not facially unlawful as it stated the parties' intent to limit the interest rate charged or collected to no more than 25%, plaintiff's attempt to collect an actual interest rate above the statutory maximum violated MCL 438.41. In light of that fact, and for the reasons set forth below, we hold that the trial court properly applied the wrongful-conduct rule by precluding plaintiff from collecting any interest, but allowing plaintiff to recover the principal of the loan.

"Michigan courts have long recognized the existence of the wrongful-conduct rule." *Orzel v Scott Drug Co*, 449 Mich 550, 558-559; 537 NW2d 208 (1995). "The wrongful-conduct rule provides that when a plaintiff's action is based, in whole or in part, on his own illegal conduct, his claim is generally barred." *Hashem v Les Stanford Oldsmobile, Inc*, 266 Mich App 61, 89; 697 NW2d 558 (2005) (quotation marks and citation omitted). The wrongful-conduct rule is not an equitable doctrine, *Varela v Spanski*, 329 Mich App 58, 83; 941 NW2d 60 (2019), but is instead a common law maxim that can be applied in two separate ways. *Orzel*, 449 Mich at 558. The first way the rule can be invoked is when the plaintiff's action is based, in whole or in part, on his own illegal conduct, and provides:

> [A] person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party. (1A CJS, Actions, § 29, p 386. See also 1 Am Jur 2d, Actions, § 45, p 752.) [*Orzel*, 449 Mich at 558 (quotation marks omitted).]

The second way in which the wrongful-conduct rule can apply is when both parties have equally participated in the illegal conduct:

---

[8] This conclusion renders moot the arguments about the remaining fees and whether the trial court properly considered them as interest. Consequently, we decline to address those issues. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018).

When a plaintiff's action is based on his own illegal conduct, and the defendant has participated equally in the illegal activity, a similar common-law maxim, known as the "doctrine of in pari delicto" generally applies to also bar the plaintiff's claim:

> [A]s between parties in pari delicto, that is equally in the wrong, the law will not lend itself to afford relief to one as against the other, but will leave them as it finds them. (1A CJS, Actions, § 29, p 388. See also 1 Am Jur 2d, Actions, § 46, p 753.) [*Orzel*, 449 Mich at 558.]

In order for the wrongful-conduct rule to apply to a given case, "plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute." *Id*. at 561. "The rule rests on the public policy premise that courts should not, directly or indirectly, encourage or tolerate illegal activities." *Hashem*, 266 Mich App at 89. However, "[t]he mere fact that a plaintiff engaged in illegal conduct at the time of his injury does not mean that his claim is automatically barred under the wrongful-conduct rule." *Orzel*, 449 Mich at 561. Where an act "amounts to a violation of a safety statute, such as traffic and speed laws or requirements for a safe work place, the plaintiff's act, while illegal, does not rise to the level of serious misconduct sufficient to bar a cause of action by application of the wrongful-conduct rule." *Id*. Additionally, "[f]or the wrongful-conduct rule to apply, a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages." *Id*. at 564.

As these cases illustrate, the first question we must consider is whether "plaintiff's conduct [is] prohibited or almost entirely prohibited under a penal or criminal statute." *Id*. at 561. As analyzed above, plaintiff violated MCL 438.41, a criminal statute, by seeking to recover interest in an amount exceeding the statutory maximum. Plaintiff contends, however, that the wrongful-conduct rule does not apply because MCL 438.41 has an intent requirement, in that the guilty entity must have "knowingly" violated the statute, and plaintiff believed it was only charging a 20% interest rate and provided security against violating the statute with the usury-savings clause. This argument relies on a misunderstanding of the statutory language, which must be applied as written. *Barshaw*, ___ Mich App at ___; slip op at 3.

Although the statute does use the word "knowingly," it does not suggest that the individual violating the statute must know that they are violating the criminal-usury statute. Instead, the statute proscribes "*knowingly* charg[ing], tak[ing] or receiv[ing] any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding 25% at simple interest per annum or the equivalent rate for a longer or shorter period." MCL 438.41 (emphasis added). Thus, the statute pertains to whether plaintiff knew that it was charging or receiving an amount of interest that was higher than the effective rate of 25% simple interest per annum. As we just concluded, there is no genuine issue of material fact that plaintiff knew it intended to collect such a rate when it sought to recover interest at a rate of more than 25% per annum. Indeed, plaintiff's own internal communications showed that the total $1 million loan was "projected to yield a cash-on-cash return of 31.4% and an IRR of 29.6%," and the filing of this lawsuit reflected plaintiff's intent to recover more than what was allowed by contract and statute. Therefore, plaintiff's argument that it did not intend to violate MCL 438.41 fails.

Whether plaintiff should be precluded from collecting all of the money owed under the contract is, however, a different question. As noted, "[f]or the wrongful-conduct rule to apply, a

sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages." *Orzel*, 449 Mich at 564. When "the illegal act is the source of both the civil right and plaintiff's criminal responsibility, a causal nexus is not lacking." *Varela*, 329 Mich App at 82.

Here, the illegal act was the attempted collection through this lawsuit of fees and interest that resulted in a rate that was effectively above 25% simple interest per annum.[9] The mortgage note is clearly related to plaintiff's attempt to collect usurious interest, as the note contains the interest rate (as well as the savings clause). However, it is only incidentally related, as there is no "sufficient causal nexus" between the two, *Orzel*, 449 Mich at 564, because the usurious interest rate was not authorized under the terms of the mortgage note, when giving effect to the usury-savings clause. And, the subject matter of the contract was clearly legal, as was the stated interest rate of 20% per annum. Thus, it was only the additional fees sought by plaintiff, now determined to be interest, that took what was legal and turned it into an illegal interest rate. Because the "punishment should fit the crime," the trial court did not err in concluding that the wrongful-conduct rule did not preclude plaintiff from recovering the principal of the loan, but did preclude it from collecting any interest.

We also reject plaintiff's contention that the criminal punishment within MCL 438.41 precludes application of any other punishment. This argument overlooks the fact that the wrongful-conduct rule requires proof of a violation of a criminal statute, but provides for a remedy that is not criminal in nature. *Orzel*, 449 Mich at 561. Undoubtedly, a criminal statute will have a criminal punishment, but the *Orzel* Court provided that, in addition to that potential criminal penalty, a party is also not permitted to obtain civil damages on the basis of that criminal conduct. Indeed, if plaintiff's argument about the exclusivity of the criminal penalty was correct, then the wrongful-conduct rule would necessarily cease to exist.

Plaintiff's argument that the wrongful-conduct rule should not apply because defendants were more culpable than plaintiff also misses the mark. "An exception to the wrongful-conduct rule may apply where both the plaintiff and defendant have engaged in illegal conduct, but the parties do not stand in pari delicto." *Id.* at 569. "In other words, even though a plaintiff has engaged in serious illegal conduct and the illegal conduct has proximately caused the plaintiff's injuries, a plaintiff may still seek recovery against the defendant if the defendant's culpability is greater than the plaintiff's culpability for the injuries . . . ." *Id.* Plaintiff contends that defendants' culpability is greater because they engaged in fraud when inducing plaintiff to come to the agreement. Plaintiff has not, however, alleged that defendants acted in a criminal manner, but only tortiously. Notably, in analyzing the exception to the wrongful-conduct rule, the Court in *Orzel*, *id.* at 569, began with the premise that both "the plaintiff and defendant have engaged in illegal

---

[9] As stated above, the usury-savings clause in the mortgage note it is not against public policy. Consequently, if plaintiff had sued and explicitly sought to recover no more than the principal and 25% interest, no illegality would be apparent.

conduct . . . ." Considering that plaintiff has not alleged "illegal" conduct by defendants, but plaintiff has violated a criminal statute, this exception does not apply.[10] *Id.*

     Affirmed.


                                        /s/ Christopher M. Murray
                                        /s/ Kathleen Jansen
                                        /s/ Cynthia Diane Stephens

---

[10] Although plaintiff argues that the trial court erred by summarily disposing of its fraud claims, the record shows that the trial court did not summarily dispose of those claims, but merely did not schedule a trial for them. Thus, this argument is not ripe for review. See *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 553; 904 NW2d 192 (2017). Additionally, plaintiff asserts that the trial court should have allowed it to present evidence of that fraudulent behavior at the scheduled trial. Because the trial on plaintiff's breach-of-contract claims is no longer necessary, that argument is moot. See *TM*, 501 Mich at 317.

-14-